709 P.2d 180

**In the Matter of Elias N. QUINTANA.**

**No. 16079.**

Supreme Court of New Mexico.

Nov. 12, 1985.

Virginia Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

H. Vern Payne, Albuquerque, for respondent.

## OPINION

This matter having come before this Court on October 9, 1985, after the completion of disciplinary proceedings conducted pursuant to NMSA 1978, Rules Governing Discipline (Repl.1985), wherein Attorney Elias N. Quintana was found to have committed nineteen (19) violations of eleven (11) rules of the Code of Professional Responsibility involving incompetence, neglect, harassment and other conduct prejudicial to the administration of justice, the Court adopts the findings and conclusions of the Disciplinary Board and the Board's recommendation that Quintana be suspended from the practice of law indefinitely, but that he not be allowed to reapply for at least two years. Due to exigent circumstances giving rise to concern by this Court that the cases of Quintana's clients might be in jeopardy, an order suspending Quintana and appointing counsel pursuant to NMSA 1978, Rules Governing Discipline, Rule 18(a) (Repl.1985), was entered on October 9, 1985 pending the filing of this formal opinion.

In February 1980, shortly after the riot at the New Mexico State Penitentiary in which her son Valentino Jaramillo was killed, Laura Cordova hired Quintana to represent her son's estate in a wrongful death action. Although Quintana testified that he had never before handled this type of case, he nonetheless had Ms. Cordova sign an "irrevocable" agreement which provided for fifty percent (50%) contingency fee. While Quintana did file a complaint in wrongful death, there is no evidence which would indicate that he took any other action in the case of any material benefit to the client up to the point of his being discharged in April 1984. In the four years that he represented the estate of Valentino Jaramillo in this matter, Quintana did little more than answer some interrogatories and confer with other attorneys who were handling similar cases. He filed no discovery motions, did not obtain an autopsy report, attended no depositions, did no investigation as to the economic value of Jaramillo's life for purposes of ascertaining damages, participated in no settlement negotiations, and kept no notes or memoranda to indicate any plan leading to a positive conclusion of the case. Additionally, he failed to name or amend his complaint to join certain necessary defendants or to properly serve others who were named. The statute of limitations now precludes the amendment of the complaint to include those defendants who are necessary parties to this action.

After Ms. Cordova terminated Quintana's representation of her son's estate, he filed and attempted to assert a charging lien against any proceeds in the case claiming he was owed forty percent (40%) of any amount as his fee for work previously done. This claim was disallowed by the trial court, and Quintana was awarded $1200 as a reasonable fee for his services payable out of any judgment or settlement. In addition to his attempt to charge a clearly excessive fee in violation of NMSA 1978, Code of Prof.Resp. Rule 2–106(A) (Repl. 1985), Quintana's neglect and incompetence in handling this case are also in violation of NMSA 1978, Code of Prof.Resp. Rules 1–102(A)(5), (6), 6–101(A)(1), (3), and 7–101(A)(1) (Repl.1985).

In a workmen's compensation case, Quintana was successful in obtaining a structured judgment for client Shirley Apodaca. Judgment was entered in May 1984, and an appeal was taken. On October 11, 1984, a mandate from the Court of Appeals affirming the judgment was received by the Clerk of the Court for the Second Judicial District. At this time, based upon the terms of the judgment, the total amount owed by the defendants was $27,929.99. Without bothering to ascertain from opposing counsel whether the judgment would be satisfied (the checks were actually in the mail) and without tendering a Judgment on the

Mandate, Quintana sought to have a Writ of Execution issued in the amount of $31,774.80 on October 11, 1984. The district court clerk's office rejected the tendered writ, because the $31,774.80 was shown as having been paid in partial satisfaction when in fact no partial satisfaction had been made. Another writ was prepared by the clerk's office at Quintana's direction in which the balance due and owing was shown to be the full amount of the judgment ($168,973.40). With full knowledge that only past due payments together with costs and attorney fees were presently owed and that the writ was incorrectly prepared, Quintana attempted to have the sheriff serve this second writ on the defendants on October 12, 1984.

After learning that his client had received her check on October 12, 1984, Quintana then filed a complaint with the disciplinary board against opposing counsel in which he alleged that counsel's failure to make voluntary satisfaction necessitated his getting a writ of execution. He did not, however, disclose that the case had been on appeal and the mandate received only a few days earlier and thus deliberately misled disciplinary counsel. Quintana's failure to disclose obvious errors in the writ to the clerk of the district court, his efforts to have an additional writ served which he knew or should have known was defective, and his attempt to mislead disciplinary counsel are violations of NMSA 1978, Code of Prof.Resp. Rules 1–102(A)(5), (6), 6–101(A)(1), 7–102(A)(1), (2), and (3) (Repl. 1985).

During this same period, Quintana became embroiled in a dispute with neighbor Irving Hall over ownership of a strip of property Quintana wished to use for his office parking. After Hall refused Quintana's offer to purchase the property, Quintana claimed that he owned the property under a theory of adverse possession. On several occasions Quintana called the police and threatened Hall with arrest if he (Hall) attempted to erect a fence on what he believed to be the property line. Hall hired an attorney, who requested Quintana to produce something to document his claim. Quintana refused to do this but told the attorney that if Hall attempted again to erect the fence, he (Quintana) would "knock it down with a truck." The attorney advised Quintana that such action would be inappropriate. In the absence of any showing by Quintana that he had any claim to the disputed strip of property, Hall again attempted to erect his fence. Quintana knocked it down and, without attempting to give notice to Hall's attorney, proceeded to the district court in Bernalillo County and obtained a temporary restraining order against Hall. In doing so, he did not comply with the requirements of NMSA 1978, Civ.P. Rule 66(b) (Cum.Supp. 1985) and did not advise the district court judge that the opposing party was represented by counsel and that counsel had not been given notice. Quintana's conduct in this matter violates NMSA 1978, Code of Prof.Resp. Rules 1–102(A)(5), (6), 7–102(A)(1), (3), and 7–106(C)(7) (Repl.1985).

Of paramount concern to the hearing committee, the disciplinary board, and this Court is Quintana's inability to appreciate the significance of what he has done or to acknowledge that his actions might be in violation of his professional obligations as an attorney. In this regard, Quintana, in some instances, denied any culpability. In other matters, he reluctantly accepted a finding of negligence or incompetence but asserted that no ethical considerations were involved. Finally, he has maintained that many of his actions were actually the fault of someone else and that, consequently, he cannot be held responsible for any alleged improprieties.

Quintana by his actions has demonstrated incompetence as an attorney and an absence of understanding of his professional obligations as an attorney and those fundamental principles necessary to the practice of law. The public has the right to expect that any person licensed by this Court to engage in the practice of law is a

person worthy of confidence in his performance of professional responsibilities and that this Court will withdraw its license to practice law from any lawyer who has demonstrated a lack of the required minimum skills.

The hearing committee recommended that Quintana be placed on carefully supervised probation but that if it were impossible to arrange for supervision adequate to secure the protection of the public, that he be indefinitely suspended from the practice of law. The disciplinary board, after hearing oral argument, concluded that it would not be feasible to arrange for the type of constant supervision which would be necessary to insure that Quintana would do no further harm to clients or to the administration of justice. In reaching its decision, the Board considered not only Quintana's unwillingness to accept responsibility for his actions but also the burdensome task that would be required of any supervisory attorney who might be asked to assume responsibility for Quintana's re-education and rehabilitation. The Board's recommendation that Quintana be suspended until he can satisfactorily demonstrate the knowledge and skill necessary to practice law without supervision as well as an appreciation of his professional obligations is consistent with the Board's conclusion that Quintana is unable to accept his professional responsibilities as an attorney. We agree.

IT IS THEREFORE ORDERED that Elias N. Quintana be and hereby is suspended indefinitely from the practice of law pursuant to NMSA 1978, Rules Governing Discipline, Rule 11(a)(3) (Repl.1985), commencing on October 9, 1985.

IT IS FURTHER ORDERED that Elias N. Quintana not be permitted to apply for readmission to the bar of this state for a period of at least two (2) years and that any such application for readmission at that time shall be preconditioned upon the following:

1. The applicant has taken and passed the Multistate Professional Responsibility Examination; and

2. The applicant has satisfied this Court that he has attained a level of competence in professional skills that would justify his readmission and is willing and able to accept his professional responsibilities. The Court will establish the procedure for determining these factors at the time any request for readmission is made.

IT IS FURTHER ORDERED that pursuant to NMSA 1978, Rules Governing Discipline, Rule 18(a) (Repl.1985), Robert P. Tinnin, Esq., and such members of his law firm as he may request to assist him are designated to inventory Quintana's open files and take any actions necessary to protect the interests of the clients until they can obtain new counsel. Costs of this inventory and any costs incurred by any client as the result of Quintana's suspension will be assessed against Quintana upon an appropriate showing to this Court.

The costs of this proceeding in the amount of $1856.82 are assessed against Quintana and must be paid to the disciplinary board no later than December 1, 1985.

IT IS SO ORDERED

WILLIAM R. FEDERICI,
Chief Justice
DAN SOSA, Jr.,
Senior Justice
WILLIAM F. RIORDAN,
Justice
HARRY E. STOWERS,
Justice
MARY C. WALTERS,
Justice