735 P.2d 1145

**In the Matter of Walter NAILS an Attorney Admitted to Practice before the Courts of the State of New Mexico.**

**No. 16610.**

Supreme Court of New Mexico.

April 22, 1987.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Bd.

No appearance for respondent.

## OPINION

PER CURIAM.

This matter is before the Court after disciplinary proceedings conducted pursuant to SCRA 1986, Rules Governing Discipline, wherein attorney Walter Nails (Nails) was found to have violated NMSA 1978, Code of Prof.Resp. (Repl.Pamp.1985), by engaging in various acts of dishonesty, by neglecting legal matters entrusted to him, and by failing to preserve his clients' funds. We adopt the Board's findings and conclusions and agree with its recommendation that Nails should be disbarred.

■ We note that Nails has not participated in these proceedings and that there is evidence to the effect that he left the State of New Mexico shortly before the instant charges were filed against him. He has, however, been served with copies of all notices and pleadings by certified mail at his address of record on file with the Clerk of this Court in accordance with the requirements of SCRA 1986, Rules Governing Discipline, Rules 17–301(C) and 17–309(D). All attorneys, whether licensed or under suspension, have an affirmative duty to advise the Clerk of any change in address. *See* SCRA 1986, Rules Governing Discipline, Rules 17–202(A) and 17–212(D). One cannot avoid disciplinary sanctions simply by concealing himself within or leaving the jurisdiction and failing to notify the Clerk of a change in address.

Most of the instant charges originated from a complaint filed by Darrell Allen (Allen), a New Mexico prison inmate incarcerated at the federal penitentiary in El Reno, Oklahoma, after the 1980 prison riot. Allen was under the impression that his sentence had been incorrectly imposed and asked a friend in Albuquerque to find an attorney to look into the matter. The friend spoke with Nails, who agreed to handle the matter for a retainer of $1400

(which included expenses for Nails to travel to Oklahoma to meet with Allen). Allen sent $1400 to Nails; this money constituted the bulk of Allen's net worth, which he had accumulated by working at prison industries for sixty cents per hour and saving nearly every cent.

Thereafter, Allen received two or three one paragraph letters from Nails, but he received no visit nor any answers to his many questions. Early in 1986, he was paroled and went to see Nails about getting a refund of part of his money. Nails finally agreed to refund $160, but provided no accounting to Allen of time spent on his behalf. Allen refused the refund, sued Nails, and was awarded judgment in the amount of $1209.00 on August 19, 1986. (Cause No. 1960–86 Metropolitan Court of Bernalillo County.) This judgment has not been paid.

When asked to respond to Allen's complaint, Nails contended that he had studied the court file and ascertained there was nothing irregular about Allen's sentence, and hence there was nothing he could do nor any need to visit Allen in Oklahoma. He maintained that he had, however, taken steps to insure that Allen would not be returned to the New Mexico penal system. Allen produced documentation to show that this was never a problem and that he had never requested Nails to take any action concerning the matter. Nails also claimed to have spent 10.5 hours doing "research." When disciplinary counsel inquired as to the nature and results of the research, Nails responded with a vituperative letter wherein he compared disciplinary counsel with "Attila the Hun" and announced that he would cooperate no further. We note that Nails has a habit of reacting to disciplinary investigations in this fashion. *See Matter of Nails*, 105 N.M. 89, 728 P.2d 840 (1986).

Since no refund was received by Allen and no showing was made by Nails that he earned the $1400 paid to him, records pertaining to Nails' trust account were subpoenaed pursuant to NMSA 1978, Disc.Brd. Proc.Rule 7(a)(2) (Repl.Pamp.1985). An examination of the bank records indicated not only that Nails no longer had Allen's money, but also that he had apparently utilized the account as a personal checking account. In addition, it appeared that monies belonging to many clients were either converted by Nails to his own use or otherwise unaccounted for. On numerous occasions the account was overdrawn. Although requested to address these apparent problems, Nails offered no explanation. It is not clear whether this was because he had no explanation or because of his position that he would not cooperate with the investigation by disciplinary counsel.

Nails' conduct with regard to his trust account violated NMSA 1978, Code of Prof. Resp.Rules 1–102(A)(4), 1–102(A)(6), 9–102(A), and 9–102(B)(3) (Repl.Pamp.1985). His failure to do any discernible work for Darrell Allen or to provide a satisfactory accounting of his time and a refund of the unearned portion of a fee paid in advance (as well as his apparent conversion of those funds to his own use when they had not in fact been earned) violated NMSA 1978, Code of Prof.Resp.Rules 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–106, 6–101(A)(3), and 9–102(B)(4) (Repl.Pamp.1985). In addition, Nails' refusal to cooperate in this investigation violated NMSA 1978, Code of Prof.Resp.Rules 1–101(C) and 1–102(A)(5) (Repl.Pamp.1985).

Nails was also found to have been paid money by a woman to handle a child custody dispute and thereafter to have taken no action in the matter. The unearned fee was never placed in his trust account. He did arrange to meet with his client one evening, ostensibly to take her to a restaurant in order to discuss her case over a soda. Nails met his client but was somewhat intoxicated; and rather than drive to a restaurant, Nails proceeded to drive her and her eleven-month-old son to Sandia Crest. He made physical advances to the woman and, when rebuffed, accused her of being a racist. When a sheriff's officer stopped Nails because of his erratic driving, the woman requested and received a ride home with the sheriff. Nails did not respond to requests for information concerning his neglect of this case, his fee, and his other behavior. His conduct in this

instance violated NMSA 1978, Code of Prof.Resp.Rules 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), 9–102(A), and 9–102(B)(4) (Repl.Pamp.1985).

 In addition to the violations noted, the hearing committee and the Board found numerous factors in aggravation of Nails' misconduct. Nails has a prior record of disciplinary offenses, his license to practice law having been suspended for six (6) months in November 1986. *See Matter of Nails*, 105 N.M. 89, 728 P.2d 840 (1986). His actions in taking money from clients and thereafter performing little or no work, as well as his conversion of trust monies to his own use, can only be described as dishonest. Nails has shown a pattern of misconduct and has committed multiple offenses. He has failed to comply in any way with the Rules Governing Discipline. He has not once acknowledged the wrongful nature of his conduct, nor has he shown the slightest hint of remorse; in fact, the few letters he did write to disciplinary counsel would indicate that he actually felt his actions were justified. Nails has also failed to make restitution to Darrell Allen, despite a judgment having been entered against him.

Under the circumstances, we see no alternative but to disbar Nails. Pursuant to SCRA 1986, Rules Governing Discipline, Rule 17–206(C), we also require that he make restitution to Darrell Allen in the amount of the judgment against him.

IT IS THEREFORE ORDERED that Walter Nails be and hereby is disbarred from the practice of law pursuant to SCRA 1986, Rules Governing Discipline, Rule 17–206(A)(1). Any motion for permission to apply for reinstatement filed pursuant to SCRA 1986, Rules Governing Discipline, Rule 17–214(A), must be accompanied by a showing that Nails has made appropriate restitution to Allen.

IT IS FURTHER ORDERED that the Clerk of the Supreme Court strike the name of Walters Nails from the roll of those persons permitted to practice law in New Mexico and that this Opinion be published in the State Bar of New Mexico *News and Views* and in the *New Mexico Reports*.

Costs of these proceedings in the amount of $125.93 are hereby assessed against Nails. These, as well as any costs previously assessed, must be paid to the Disciplinary Board prior to any application for reinstatement.

IT IS SO ORDERED.

WALTERS, J., not participating.