812 P.2d 786

In the Matter of the Petition for Reinstatement of Elias N. QUINTANA, Jr. An Attorney Suspended from Practice Before the Courts of the State of New Mexico.

No. 16079.

Supreme Court of New Mexico.

May 30, 1991.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

Elias N. Quintana, Jr., pro se.

OPINION

PER CURIAM.

This matter is before the court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 to –316 (Repl.Pamp. 1988 & Cum.Supp.1990), wherein suspended attorney Elias N. Quintana, Jr. seeks reinstatement to the practice of law. We agree with the Disciplinary Board that Quintana has not demonstrated clearly and

convincingly, as required under Rule 17–214(D), that he presently has the moral qualifications and is once again fit to resume the practice of law or that his resumption of practice would pose no detriment to the integrity and standing of the bar, the administration of justice, or the public interest. We deny Quintana's petition.

Quintana first was suspended indefinitely from the practice of law on October 9, 1985, for acts of neglect and incompetence, charging excessive fees, asserting frivolous claims, failure to observe the rules, of a tribunal, and conduct prejudicial to the administration of justice and adversely reflecting on his fitness to practice law in violation of Rules 1–102(A)(5) and (6), 2–106(A), 6–101(A)(1) and (3), 7–101(A)(1), 7–102(A)(1), (2), and (3), and 7–106(C)(7) of the former Code of Professional Responsibility (now SCRA 1986, 16–101 to –105, 16–301 to –305, 16–401 and –404, and 16–804). *In re Quintana*, 103 N.M. 458, 709 P.2d 180 (1985). On August 14, 1986, Quintana was suspended for an additional indefinite period of time for other acts of misconduct (committed prior to his original suspension) involving misrepresentation, neglect, improper fee splitting, disrespect to tribunals, and conduct prejudicial to the administration of justice in violation of Rules 1–102(A)(4), (5), and (6), 3–102(A), 6–101(A)(3), 7–102(A)(5), and 7–106(C)(6) and (7) of the former Code of Professional Responsibility (now SCRA 1986, 16–101, –103, –104, –301 to –305, –401, –404, –504, and –804). *In re Quintana*, 104 N.M. 511, 724 P.2d 220 (1986). The costs of these proceedings totaling $2,086.13 were assessed against Quintana.

In both of the aforementioned opinions, this court expressed great concern regarding Quintana's apparent inability to appreciate the significance of his misconduct and tendency to attribute to others the responsibility for his own actions. Based upon the record before us, we conclude that Quintana continues to demonstrate a lack of understanding of these inadequacies and has done little, if anything to overcome them.

In view of the seriousness of Quintana's misconduct, the court preconditioned reinstatement upon a showing by Quintana "that he has attained the level of competence in professional skills that would justify his readmission and that he has developed the ability to accept not only his obligations as a professional but also responsibility for his own actions." 104 N.M. at 514, 724 P.2d at 223. The court directed that a procedure for determining these factors would be established at the time of a request for readmission.

When Quintana petitioned for reinstatement, the court appointed a special panel of lawyers and judges to inquire into Quintana's practical understanding of various areas of the law and to ascertain whether Quintana had made progress in understanding and addressing the types of problems he had shown in dealing with fellow attorneys, clients, and members of the judiciary. The panel also was asked to consider whether Quintana had acquired the willingness and ability to accept his professional responsibilities and to meet the basic obligations imposed upon members of the bar and officers of the court.

The panel met with Quintana and subsequently filed its report with the committee that was to hear Quintana's petition. In its report, which is a part of the record of these proceedings, the panel related that although Quintana's attitude of rebelliousness had improved substantially through what Quintana described as a process of religious reawakening, it could not be said that he had overcome his tendency to blame others for his shortcomings. The panel also opined that Quintana's previous failure to represent his clients in a competent manner was probably more attributable to emotional instability and a severe lack of organization than to any deficiency of knowledge or ability. It was noted that while his emotional state had improved, there was "little evidence to suggest that Mr. Quintana would be better able to organize his professional life than he was."

For these reasons, the panel concluded that Quintana presently was not able to practice law in a competent manner and

that academic testing (such as bar examinations) would not aid in determining whether he could do so. The panel suggested that perhaps an apprenticeship or clerkship under the strict supervision of a New Mexico attorney might be a more viable way to assess Quintana's capabilities. The panel also recommended that Quintana be required to address fully any outstanding disciplinary complaints and make appropriate restitution of any unearned fees.

Upon receipt of this report, the hearing committee chairman scheduled a full hearing on the reinstatement petition in July 1989. During the July 1989 hearing, Quintana presented no evidence apart from his own uncorroborated testimony to show that he had taken steps to make amends to those who had been harmed by his past misconduct. With respect to most of these persons, it was Quintana's position that he owed them nothing or, if he did, that the debts had been discharged in bankruptcy. Additionally, he had paid only $25.00 toward the costs assessed against him.

There was no evidence presented, nor any claim made by Quintana, that he had made efforts to stay abreast of current developments in New Mexico law. Quintana claimed to have taken and passed the California bar examination and viewed this as sufficient evidence of his understanding of the law. While we congratulate Quintana on his success on the California examination, this would not be relevant to his qualifications to practice law in New Mexico.

It was shown that during his suspension Quintana had been involved in litigation with a former business partner, whom he countersued in addition to others against whom he filed third-party complaints, for one billion four hundred million dollars ($1,400,000,000) in claimed damages. The third-party complaint against one of the defendants was dismissed because of improper service and lack of jurisdiction, and the third-party complaint against another apparently was abandoned. (Quintana testified that he could not recall what had transpired with that portion of the litigation.) The counterclaim against the former

partner was dropped by Quintana in exchange for the partner's return to him of a desk and a credenza. We note that Quintana's exaggerated claim of damages and failure to observe procedural rules is vaguely reminiscent of the type of conduct exhibited by him in 1985, which led to his original suspension.

During the 1989 hearing, the committee also heard testimony from a forensic psychologist who examined Quintana and found him to be suffering from a passive-aggressive personality disorder, which was present at the time of his original misconduct and which was quite probably a causative factor in that misconduct. The psychologist testified that intensive therapy for a period of six months to one year could alleviate this problem to some extent but that if untreated, Quintana likely would continue to exhibit the same type of behavior that led to his previous difficulties.

The record indicates that midway through the 1989 hearing it became patently obvious that Quintana was in no way prepared to show rehabilitation and that his readmission to practice even on a probationary basis was out of the question. For this reason, the hearing was recessed indefinitely with the consent of all parties. It was understood that Quintana would seek therapy, take steps to familiarize himself with developments in New Mexico law, develop a plan to pay the assessed costs and make appropriate restitution to clients, and make other efforts to show that his request for reinstatement safely could be granted. Quintana was advised that he would be free to request a resumption of the hearing whenever he felt prepared to demonstrate his fitness. In December 1990 Quintana made such a request, and the hearing was reconvened.

Once again, Quintana relied almost entirely upon his own testimony. He claimed to have subscribed to and read the New Mexico *Bar Bulletin* but was unaware of changes in disciplinary rules adopted by this court and announced fully in that publication. Although uncorroborated, he also claimed to have attended meetings of the Tulsa (Oklahoma) Trial Lawyers Associa-

tion and to be learning Oklahoma law. Even if it were true, however, and with all due respect to the courts of the State of Oklahoma, it is of no concern to this court whether or not Quintana is familiar with Oklahoma law. As previously noted, we are concerned here with whether an applicant for reinstatement to the bar of New Mexico is familiar with New Mexico law. If he is to be readmitted to the bar of this state, Quintana should enroll in and attend CLE courses to reacquaint himself with our laws. Attendance at a New Mexico bar review course also might be helpful. Quintana's claimed aptitude in Oklahoma law is a matter better left for determination by the Oklahoma bar examiners, should Quintana decide to pursue a license there.

Quintana also presented a letter from a Tulsa psychologist reporting that he had had "several sessions" with Quintana and concluding that Quintana was in need of further counseling. The doctor was not called to testify and answer questions regarding his qualifications, his treatment of Quintana, the proposed duration of this treatment, or Quintana's prognosis for recovery. Expert opinion evidence through letter or affidavit is not competent evidence. See, e.g., Catalano v. Lewis, 90 N.M. 215, 561 P.2d 488 (Ct.App.), cert. denied, 90 N.M. 254, 561 P.2d 1347 (1977). Even had the doctor offered in his letter an opinion that Quintana was cured of his personality disorder, the committee would have been free to ignore that opinion. As it is, accepting the doctor's letter at face value, we do not view it as indicative of Quintana's having undergone the type of intensive therapy prescribed by the psychologist who testified at the 1989 hearing or as evidence that Quintana has overcome his psychological problems.

There was also no evidence presented to show that Quintana was inclined to make or had made any genuine attempts to make amends to persons injured by his misconduct. Quintana blamed his lack of effort on disciplinary counsel, stating she failed to provide him with the names and current addresses of these persons, however, Quintana had been given this information on at least two prior occasions. Quintana further opined that he probably had not charged his former clients enough for the services provided to them and that this fact may have contributed to his problems, although it is unclear how this would relate to the violations leading to his suspension. While expressions of remorse for past misdeeds are not a guarantee of reinstatement, statements to the effect that his proven misconduct was attributable to a misguided sense of generosity indicate that Quintana still has failed to grasp even remotely the essence of his prior misconduct. Until Quintana can appreciate the fact that his behavior was highly inappropriate we see little hope for his rehabilitation.

Prior to the December 1990 hearing, Quintana requested and completed an amended reinstatement questionnaire covering the period between August 1989 and December 1990. In his answer to Question 12 of the amended questionnaire, which requests information regarding any litigation in which the applicant has been involved during the period in question, Quintana failed to mention that his former spouse had commenced proceedings against him regarding his nonpayment of child support and that he had been held in contempt of court and given a thirty-day jail sentence, which was suspended solely on condition that he make timely support payments. Quintana represented elsewhere in his answers that he was "current" in his child support but omitted reference to his failure to pay previously ordered support and outstanding arrearages of more than $4,000.00. Such evasive and misleading responses not only impede investigation into an attorney's present fitness but also are inconsistent with an attorney's obligation to be truthful and candid.

Quintana demonstrated a similar lack of candor when he advised the hearing committee that he had been offered a position by a Tulsa attorney whose personal injury practice was one of the largest and most successful in Oklahoma. He presented a letter from the Tulsa attorney, who stated that he would be willing to supervise Quintana if he were reinstated on a probationary basis. Quintana failed to mention,

however, that the attorney was himself the subject of disciplinary proceedings involving charges arising from his invasion of his trust account to pay gambling debts and his involvement in a "check-kiting" scheme with a criminal client. The attorney had resigned from the Oklahoma bar in 1981 pending disciplinary action and was not reinstated until July 1988. *See In re Reinstatement of Elias*, 759 P.2d 1021 (Okla. 1988). When asked how it was that Mr. Elias managed to establish a large and successful practice in the relatively brief period since his reinstatement, Quintana responded that Mr. Elias had never actually ceased practicing law and that Oklahoma rules permit a suspended attorney to practice provided it is done under the supervision of another attorney. A reading of the Rules Governing Disciplinary Proceedings, 5 O.S.A.1981, Ch. 1, App. 1–A, leads us to believe this is not an accurate statement.

Upon receipt of the hearing committee's report and recommendation that his petition be denied, Quintana requested oral argument before a panel of the Disciplinary Board. During the oral argument, he attempted to introduce additional evidence to show that he had taken remedial steps to address some of the deficiencies noted by the Committee in its report. The Board panel correctly applied Rule 17–314(B) and refused to admit the additional evidence. Argument before the Board panel is not meant to constitute a trial *de novo*.

It is clear that the hearing committee made every conceivable effort to provide Quintana with a full opportunity to present whatever evidence he had and to take all steps necessary to show that he had overcome the problems leading to his suspension. It is equally clear that Quintana either could not or refused to make such a showing. He appears to believe that he should be reinstated to practice simply because five years have elapsed since his original suspension and because it is his wish to reestablish himself as a lawyer. Unless or until Quintana invests the effort necessary to produce competent evidence to prove that he has addressed his deficiencies and has eliminated the dangers to the public and the integrity of the profession

that his reinstatement would presently pose, Quintana will not be readmitted to the bar of New Mexico.

If Quintana is ever to be readmitted on a probationary basis, it will be under the strict supervision of a competent New Mexico attorney known to this Court and over whom this court has jurisdiction. While it is tempting to shift the responsibility for overseeing Quintana's activities to authorities in a neighboring state, we do not see this as appropriate. By such action, we would be holding Quintana out to the public as one who has been certified by this court as someone to whom legal matters can safely be entrusted. Although Quintana has expressed some interest in relocating his practice to either Oklahoma or California, he will not accomplish this objective with the blessings of this court until we are satisfied that Quintana has the qualifications to meet the standards imposed by this court upon the attorneys to whom it grants licenses.

IT IS THEREFORE ORDERED that the petition of Elias N. Quintana, Jr., for reinstatement into the practice of law be and hereby is denied.

IT IS FURTHER ORDERED that no subsequent application for reinstatement may be made by Quintana until the expiration of a twelve-month period commencing on the date of this order in accordance with Rule 17–214(B)(2). In addition, no petition for reinstatement may be filed unless accompanied by a showing that Quintana has done the following:

(1) Sought and obtained intensive therapy designed to alleviate his present psychological problems. Such a showing shall be made by way of affidavit from a licensed psychiatrist or psychologist stating that he or she has treated Quintana on a regular and frequent basis for a period of at least six months and that he or she will appear and testify at any hearing regarding Quintana's present emotional state and prognosis for continued recovery;

(2) Attended CLE seminars sponsored or approved for credit by the State Bar of New Mexico designed to acquaint him with

developments in all areas of the law in which he intends to practice as well as CLE seminars dealing with professional responsibility and ethics;

(3) Documented and proved accountings of time spent on behalf of clients Allen Howard and Helen Lucero and refunded any unearned portions of fees advanced to him on behalf of or by those clients.

(4) Refunded the amounts of $1,259.00 to client Mary Serna and $912.50 to client Linda Quintana; and

(5) Continue to make regular payments to the Disciplinary Board of $50.00 per month toward the costs previously assessed against him.

We remind Quintana that these are merely preconditions to any application for reinstatement and that by meeting the preconditions he is assured only of a hearing conducted pursuant to Rule 17–214(D). The questions of whether he actually has demonstrated his fitness to resume the practice of law and whether he should be reinstated will be made only after a review of the evidence he presents at this hearing and a consideration of the Disciplinary Board's recommendation.

IT IS FURTHER ORDERED that this opinion be published in the State of New Mexico *Bar Bulletin* and the *New Mexico Reports.*

Costs of this proceeding in the amount of $1,790.57 are assessed against Quintana and pursuant to Rule 17–203(D) must be reimbursed to the Disciplinary Board prior to any reinstatement.

IT IS SO ORDERED.

MONTGOMERY, Justice, specially concurring.

I concur in the denial of the petition for reinstatement. I do not concur in the preconditions for filing a subsequent petition, believing as I do that the Court should not attach conditions, beyond those specified in the Rules Governing Discipline, to the fil-

ing of a petition for reinstatement by a suspended or disbarred attorney.