918 P.2d 365

**In the Matter of Michael M. ORDAZ, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

No. 23629.

Supreme Court of New Mexico.

June 12, 1996.

Christine E. Long, Deputy Disciplinary Counsel, Albuquerque, for Disciplinary Board.

Michael M. Ordaz, Albuquerque, no appearance.

## OPINION

PER CURIAM.

This Court is once again faced with one of its most difficult tasks—disbarring an attorney from the practice of law. This matter came before this Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 to 17–316 (Repl.Pamp.1995), wherein the disciplinary board recommended Michael M. Ordaz be disbarred from the practice of law.

Respondent had only been practicing three years when he suddenly received three complaints filed against him within a four-month period. All three complaints alleged severe lack of communication. Two of those complaints involved allegations of respondent receiving money improperly.

The first complaint was filed by Bonnie R. Smith and Kerry Boyd, who hired respondent to represent them in a landlord-tenant dispute in October 1994. Ms. Smith and Mr. Boyd paid respondent a retainer and filing fee. Thereafter, respondent informed his clients approximately a week before the case was set to go to trial that he had accepted an appointment with the public defender's office and that another attorney would try their case. Ms. Smith and Mr. Boyd were not pleased by the sudden change in counsel, but they agreed to accept the alternate counsel and the case was tried on March 29, 1995, wherein complainants were awarded $573.14.

After the award of $573.14, Ms. Smith and Mr. Boyd decided not to appeal the matter; however, after this decision they were unable to contact their alternate counsel. By chance when attempting to contact their new counsel in June, 1995, Ms. Smith spoke to respondent. Ms. Smith explained her frustration at not being able to contact her new attorney and at not receiving the monies due her. Respondent informed her that he would look into the situation.

A few days later, respondent telephoned Ms. Smith and told her that he had obtained the judgment from the opposing party and

that he would mail the check to her. When Ms. Smith and Mr. Boyd did not receive the check in the mail, they made several telephone calls to the public defender's office attempting to speak with respondent, who failed to return their calls. Ms. Smith also wrote to respondent, but he did not respond to her letter.

Respondent never contacted Ms. Smith or Mr. Boyd or mailed the promised check, however, respondent received and cashed a $573.14 check from the opposing party in satisfaction of the judgment awarded.

The second complaint was filed by Ms. Christy Hartman, who hired respondent to represent her in a landlord/tenant dispute, in February, 1995. Ms. Hartman paid respondent both a retainer and a filing fee. Ms. Hartman made three to four calls a week to respondent from February through July 1995, first at his office and then at the public defender's office. Although Ms. Hartman left messages when she called, respondent never returned her calls.

Ms. Hartman spoke with respondent once in July 1995, at which time he informed her that no action had been taken on her case. When respondent left his private practice to work at the public defender's office he did not notify Ms. Hartman of his change of position.

The third complaint was filed by Kimbal D. Schilling, who hired respondent to represent her in a landlord/tenant matter in or about June, 1994. Ms. Schilling was unable to contact respondent from almost the beginning of his representation. After approximately twenty attempts by telephone, Ms. Schilling discovered that respondent no longer maintained his private practice, but was working with the public defender. Once Ms. Schilling discovered respondent's job change, she left multiple messages with the Office of the Public Defender and received no response.

Ms. Schilling finally contacted respondent in late August and set up an appointment to retrieve her file, but respondent failed to appear at this meeting. Ms. Schilling then left a total of eleven (11) messages at the Office of the Public Defender before she

again was able to speak to respondent in mid-September. Again Ms. Schilling set up an appointment to retrieve her file, but again respondent failed to appear.

Ms. Schilling finally met with respondent on October 5, 1995, and he returned her client file; however, the client file was missing several witness statements and audio tapes. Ms. Schilling attempted to contact respondent regarding the missing portions of her file, but was never able to do so.

■ By reason of the foregoing conduct in all three complaints, respondent violated the following Rules of Professional Conduct, SCRA 1986, 16–101 to 16–805: Rule 16–101 by failing to provide competent representation to his client(s), Rule 16–103 by failing to provide diligent representation to his client(s), Rule 16–104 by failing to keep his client(s) reasonably informed about the status of a matter or promptly complying with reasonable requests for information, Rule 16–105(A) by charging an unreasonable fee as no legal work was performed for his client(s), Rule 16–115(B) by failing to promptly deliver to the client funds the client is entitled to receive, Rule 16–116(D) by failing to take steps to protect his clients' interests and failing to surrender portions of a client's file, Rule 16–804(D) by engaging in conduct that is prejudicial to the administration of justice, and Rule 16–804(H) by engaging in conduct that adversely reflects on his fitness to practice law.

Respondent also violated Rule 16–801(B) by failing to respond to lawful requests for information from the Office of Disciplinary Counsel and Rule 16–803(D) by failing to cooperate with the Disciplinary Board and not participating in any part of the disciplinary process. Although respondent was aware of the charges against him, he never responded to correspondence from disciplinary counsel and never filed an answer to the specification of charges. On December 13, 1995, respondent came to the office of disciplinary counsel and signed for copies of all documents previously sent to him by disciplinary counsel, including the specification of charges. Respondent specifically was informed that his answer was due on January 3, 1996.

■ The allegations against respondent were deemed admitted due to his failure to respond. Rule 17–310(C) states that "the charges will be deemed admitted" if a respondent-attorney fails to answer the specification of charges within twenty (20) days. As we have stated in *In re Roberts–Hohl*, 116 N.M. 700, 704, 866 P.2d 1167, 1171 (1994), "[t]he language of the rule is mandatory and applies to all allegations in the specification of charges, not merely the factual allegations. Once an attorney has failed to deny the charges, the only task for the hearing committee is to hear evidence in aggravation or mitigation and recommend an appropriate sanction." The hearing committee in respondent's case held a hearing regarding sanctions which respondent failed to attend. The hearing committee determined that respondent should be disbarred and the disciplinary board agreed.

The seriousness of the charges against respondent are irrefutable. Respondent accepted fees without providing services and also cashed a judgment payment and failed to turn those funds over to his clients. Additionally, respondent failed to communicate with both his clients and disciplinary counsel. This Court has stated repeatedly that the failure to properly account for client monies is one of the most serious ethical violations an attorney can commit. *See, e.g., In re Turpen*, 119 N.M. 227, 889 P.2d 835 (1995); *In re Kelly*, 119 N.M. 807, 896 P.2d 487 (1995); *In re Gabriel*, 110 N.M. 691, 799 P.2d 127 (1990). The failure to properly account for client monies violates the very core of trust a client places in his or her attorney.

■ It is disheartening that a relatively new member of the bar of New Mexico should find himself in such dire circumstances. The fact that respondent chose not to defend his actions and cooperate with the disciplinary process is even more dismaying. Attorneys must realize that it is not the purpose of the disciplinary system to punish attorneys, but to protect the public. *See, e.g., In re Tapia*, 110 N.M. 693, 799 P.2d 129 (1990); *In re Sullivan*, 108 N.M. 735, 779 P.2d 112 (1989); *In re Nails*, 105 N.M. 89, 728 P.2d 840 (1986); *In re Morris*, 74 N.M. 679, 397 P.2d 475 (1964). If attorneys cooperate with the disciplinary process, the chance that he or she may retain his or her license to practice law is increased dramatically. This is not to say, however, that this Court will not continue to take serious action such as disbarment when an attorney so seriously violates his or her client's trust as when he or she converts client funds.

IT IS THEREFORE ORDERED that Michael M. Ordaz is hereby disbarred from the practice of law pursuant to SCRA 1986, 17–206(A)(1), effective May 22, 1996;

IT IS FURTHER ORDERED that Michael M. Ordaz be assessed the costs of this action in the amount of $91.04 to be paid on or before July 22, 1996, and any amount unpaid thereafter shall be assessed fifteen percent (15%) interest per annum, and said costs shall be reduced to a transcript of judgment;

IT IS FURTHER ORDERED that any petition for reinstatement must show that Michael M. Ordaz successfully completed the State of New Mexico Bar Examination and the Multistate Professional Responsibility Examination;

IT IS FURTHER ORDERED that Michael M. Ordaz make restitution in the amount of $162.81 to Christy Hartman on or before August 20, 1996;

IT IS FURTHER ORDERED that Michael M. Ordaz make restitution in the amount of $735.95 to Bonnie Smith and Kerry Boyd on or before August 20, 1996;

IT IS FURTHER ORDERED that Michael M. Ordaz must show compliance with SCRA 1986, 17–212, of the Rules Governing Discipline, and with the Rules Governing Admission to the Bar of the State of New Mexico; and

IT IS FURTHER ORDERED that any petition for reinstatement must show by clear and convincing evidence that Michael M. Ordaz has the moral qualifications and is fit to resume the practice of law and that the resumption of his practice will not be detrimental to the integrity and standing of the bar and the administration of justice and the public interest.

IT IS SO ORDERED.