2001-NMSC-011

21 P.3d 30

**In the Matter of D. Diego ZAMORA, Esq.**

**An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

**No. 26,662.**

Supreme Court of New Mexico.

April 12, 2001.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, NM, for the Disciplinary Board.

Briggs F. Cheney, Albuquerque, NM, for Respondent.

OPINION

PER CURIAM.

{1} This matter came before the Court after disciplinary proceedings conducted pursuant to the Rules Governing Discipline, Rules 17–101 through 17–316 NMRA 2000, wherein respondent, D. Diego Zamora, did not contest the factual allegations against him or the allegations that his conduct was in violation of several of the Rules of Professional Conduct, nor did he argue that he should not be disbarred pursuant to Rule 17–206(A)(1). The only issues before the hearing committee, the disciplinary board, and this Court were (1) the length of the term of disbarment to be imposed and (2) when reinstatement could be sought under Rule 17–214(A). The hearing committee unanimously recommended an eighteen-month period of disbarment commencing May 1, 1999, *nunc pro tunc*, to be followed by an immediate application for reinstatement upon certain preconditions. The disciplinary board panel was divided three ways with one member recommending the eighteen-month disbarment, a second member recommending a two-year period of disbarment, and a third member recommending disbarment with no application for permission to apply for reinstatement to be filed until a period of three years had elapsed, an approach consistent with Rule 17–214(A).

{2} We modify these recommendations and disbar D. Diego Zamora for a period of twenty months effective May 1, 1999, *nunc pro tunc*, with automatic reinstatement on a probationary basis effective January 1, 2001.

{3} On April 29, 1999, the Lawyers' Assistance Committee of the State Bar of New Mexico conducted an intervention in respondent's practice of law due to concern that he was abusing crack cocaine. As a result of the intervention, respondent agreed to enter a recovery program; within two hours of the termination of the intervention session, respondent was on his way to Monroe, Louisiana, where he admitted himself into the Palmetto Addiction Recovery Program. He voluntarily ceased the practice of law at this time.

{4} On June 29, 1999, while still in the recovery program, respondent self-reported to the office of disciplinary counsel that beginning in September 1998 and during his drug addiction that led to the intervention and his entry into the recovery program, he had misappropriated money from his attorney trust account. He represented that an audit of his trust account would be conducted at his expense and that the audit results and the underlying records would be provided to disciplinary counsel. He further stated that he was making a sincere effort to repay his clients. On October 6, 1999, the auditor's report was presented to disciplinary counsel and showed that a total of $37,090 had been taken from a number of respondent's clients. Based upon these facts, the disciplinary charges alleged that respondent had violated several Rules of Professional Conduct: Rule 16–115(A) by failing to safeguard a client's property, Rule 16–804(C) by engaging in conduct involving dishonesty, and Rule 16–804(H) by engaging in conduct adversely reflecting upon one's fitness to practice law. Respondent filed no answer denying either the factual allegations or the allegations of misconduct and consented to disciplinary counsel's motion that they be deemed admitted pursuant to Rule 17–309(C). A hearing was scheduled to consider any facts in aggravation or mitigation of respondent's conduct.

{5} Pursuant to *Standards for Imposing Lawyer Sanctions*, published by the American Bar Association Center for Professional Responsibility, the only factors that were considered to aggravate respondent's misconduct were the presence of a dishonest motive and the fact that respondent had substantial experience in the practice of law. *See ABA Standards*, § 9.22(b) & (i) (1991)(amended 1992).

{6} With respect to mitigating factors, disciplinary counsel confirmed that respondent had no prior disciplinary problems or complaints since his admission to the bar in 1983. *See ABA Standards* § 9.32(a)(1991)(amended 1992). Following his self-reporting to the office of disciplinary counsel but prior to the time charges were filed against him, respondent had obtained a bank loan and voluntarily made full restitution to all clients whose money he had taken. *See ABA Standards,* § 9.32(d)(1991) (amended 1992). Throughout the proceedings, respondent cooperated fully with disciplinary authorities and demonstrated genuine remorse for his conduct. *See ABA Standards,* § 9.32(e)(1991)(amended 1992). He stated on several occasions that he believed he deserved to be disbarred for a lengthy period of time. *See ABA Standards,* § 9.32(*l*) (1991)(amended 1992).

{7} The *ABA Standards* also suggest that mental disability or chemical dependency, including alcoholism or drug abuse, may be considered in mitigation of misconduct if (1) there is medical evidence that a respondent is affected by a chemical dependency or mental disability, (2) the chemical dependency or mental disability caused the misconduct, (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation, and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. *See ABA Standards* § 9.32(i)(1991)(amended 1992).

{8} Respondent presented a substantial amount of testimony and other evidence regarding his addiction and the residential and post-release treatment he had undergone. Dr. Steven Wright, who is board certified in the fields of both family medicine and addiction medicine, testified that the chemical dependency experienced by respondent possessed all the features of a medical disease because of the characteristic medical problems that occurred as a consequence of the disease and the predictable treatment outcome. The New Mexico Physicians' Assistance Program, with which Dr. Wright is familiar, has a recovery program success rate of over ninety percent. The assistance program has demonstrated that following appro-

priate inpatient treatment *and a return to work* (emphasis added) the elements to a successful recovery from addiction consist of a program that (1) is mandatory, (2) requires regular participation in a twelve step recovery program, (3) incorporates random drug testing and/or screening, and (4) requires participation for five years. The random drug testing and screening is believed to be the key to the protection of the public that the professional serves. Because of the nature of chemical dependency, the random testing/screening is essential to assure that an individual will not escape detection in the event of a relapse.

{9} In 1986, the State Bar of New Mexico instituted an assistance program for attorneys suffering from alcohol and drug dependency, which was patterned after the New Mexico Physicians' Assistance Program. The Lawyers' Assistance Program presently provides services that include intervention, monitoring, and drug testing and screening by the New Mexico Council on Alcohol and Drug Dependency pursuant to a contract with the State Bar of New Mexico.

{10} Before his release from the residential recovery program, respondent entered into a written monitoring agreement developed as a joint project of the Lawyers' Assistance Program and the disciplinary board and designed to establish a formal recovery program for a lawyer suffering from the disease of addiction. Under the terms of this agreement, respondent is required to (1) report to an appointed attorney monitor on a regular basis, (2) abstain totally from the use of any mind-altering substances and have the use of any prescribed medications monitored by a physician trained in the field of addiction, (3) attend twelve step meetings at least three to five times weekly and accompany his attorney monitor to at least two such meetings each month, and (4) submit to random drug screening.

{11} Since his release from the residential recovery program on August 29, 1999, respondent has fully complied with all of the terms of the agreement. Additionally, he has voluntarily met with licensed psychologists to address the personal and emotional

problems associated with the disease of addiction.

{12} This Court has consistently held the position that

[s]tealing client funds is perhaps the most egregious violation of a lawyer's ethical responsibilities; it is a violation of the trust placed in lawyers by their clients. A lawyer's trust account should be held sacred; wilfully taking funds from a trust account cannot and will not be tolerated by this Court. In such cases, disbarment is the appropriate sanction.

*In re Kelly,* 119 N.M. 807, 809, 896 P.2d 487, 489 (1995); *see also In re Hamar,* 1997–NMSC–048, 123 N.M. 795, 945 P.2d 1013 (1997) (disbarring for minimum of three years an attorney who misappropriated funds of numerous clients and consented to disbarment but offered no evidence in mitigation of his misconduct); *In re Rohr,* 1997–NMSC–012, 122 N.M. 774, 931 P.2d 1390 (disbarring with no mention of minimum period an attorney who voluntarily reported misappropriations and offered evidence in mitigation but was unable to make restitution[1]); *In re Krob,* 1997–NMSC–037, 123 N.M. 652, 944 P.2d 881 (disbarring for minimum of three years an attorney who failed to respond to charges of misappropriating client funds and failed to participate in disciplinary process); *In re Schmidt,* 1996–NMSC–019, 121 N.M. 640, 916 P.2d 840 (disbarring for minimum of three years an attorney with prior discipline, including period of suspension, who misappropriated $10,000 in client funds, failed to participate in disciplinary proceedings, and failed to make restitution).

■ {13} On the other hand, we have repeatedly stressed that the purpose of attorney discipline is not to punish attorneys but to protect the public. *See, e.g., In re Ordaz,* 1996–NMSC–034, 121 N.M. 779, 918 P.2d 365; *In re Tapia,* 110 N.M. 693, 799 P.2d 129 (1990); *In re Sullivan,* 108 N.M. 735, 779 P.2d 112 (1989); *In re Nails,* 105 N.M. 89, 728 P.2d 840 (1986). For this reason, the Court will weigh mitigating against aggravating factors and seek to impose the discipline necessary to guard the public, while at the same time to provide the attorney with as much encouragement and opportunity for rehabilitation as are warranted by the circumstances of the case.

{14} In *Kelly,* this Court addressed the combined problem of addiction and misappropriation of client funds in the following manner:

Among the mitigating circumstances is [respondent's] demonstration of recovery from alcohol addiction. During the period in which he converted client funds, [respondent] was suffering from acute alcoholism. Although addiction cannot provide a defense to unethical conduct, recovery from such conditions as substance abuse or mental illness can be considered in mitigation if the respondent can demonstrate a prolonged period of rehabilitation. In February 1994, about the time the disciplinary board began receiving complaints about his misappropriation of client funds, [respondent] responded positively to a substance abuse intervention conducted by members of the State Bar of New Mexico Lawyers' Assistance Committee and other concerned individuals. [Respondent] sought help for his addiction by attending psychological counseling through Veterans Administration Hospital and by attending Alcoholics Anonymous meetings once and sometimes twice a day. [Respondent] has demonstrated the requisite period of rehabilitation necessary for this to be considered a mitigating factor.

119 N.M. at 808, 896 P.2d at 488 (citations omitted). In addition to his proof of a significant period of rehabilitation, other mitigating factors included respondent's cooperation throughout the disciplinary proceedings, his voluntary payment of partial restitution, his good professional reputation, and his demonstration of remorse for his conduct.

{15} In view of all mitigating factors, the hearing committee recommended that respondent be indefinitely suspended for a minimum of three years with all except the first year of suspension deferred. We declined to

---

1. Rule 17–214(A) of the Rules Governing Discipline provides that "[u]nless otherwise stated in the order of disbarment, a motion for permission to apply for reinstatement may not be filed for a period of at least three (3) years from the effective date of the disbarment."

accept the recommendation, reasoning that the willful misappropriation of client funds by an attorney requires the sanction of disbarment. Public confidence in the ability of our profession to self-regulate requires no less. We did, however, take into consideration the mitigating factors and exercised our authority under Rule 17–214(A) to permit respondent to file a motion for permission to apply for reinstatement after a period of two rather than three years provided that he made full restitution, paid all costs of the disciplinary proceeding, successfully completed the Multistate Professional Responsibility Examination, and made a showing that he had maintained sobriety.

{16} In the case at bar, counsel for respondent urged us to take a step beyond the *Kelly* holding and disbar respondent retroactively beginning at the time he ceased the practice of law, reinstate him immediately on a probationary basis, and carefully monitor him for a period of five years. In essence, counsel urged this Court to follow the approach to addiction utilized by the medical profession and permit respondent to resume his career forthwith but under very stringent conditions, including immediate disbarment for an additional three years should he fail to abide by any terms of probation.

{17} As noted by one member of the disciplinary board panel, a potential downside to this approach is the risk of sending a message to the public and the profession that addiction is a justification for stealing client funds or implying that we have adopted a policy that an attorney who steals his or her clients' money will suffer minimal consequences so long as he or she was under the influence of a controlled substance at the time and has since abstained from using said substance. We unequivocally disabuse anyone of this notion.

{18} This Court is not retreating from our previously-held position that theft of client funds will consistently result in disbarment. Attorneys who steal from their clients will always bear the stigma of disbarment because the fact and circumstances of any disbarment are permanent matters of public record and available to the public. Secondly, although we reserve the right to shorten a period of disbarment where an attorney has a previously unblemished record, has demonstrated remorse, has made restitution, has self-reported and cooperated with the disciplinary process, has shown a causal connection between the misconduct and a medical or mental condition, and has documented a significant period of recovery, we also caution that Rule 17–214(A) authorizes this Court to disbar an attorney for a period of time longer than three years if the circumstances warrant. Finally, any decrease in the period of disbarment will be coupled with strict conditions of supervised probation at the time of reinstatement.

{19} Respondent is on a very short tether, as he should know from our remarks from the bench during the hearing and from the language in the resultant order of discipline. The terms of his probation are rigid and the length of his probation (five years) longer than what is generally imposed. Respondent has had his one bite of the apple and we will not hesitate to impose an additional period of disbarment should he violate any term of his probation. In particular, should a random drug test indicate the presence of any controlled substance, our response will not be a lenient one.

{20} Now, therefore, it is ordered that respondent is disbarred for twenty months, commencing retroactively to May 1, 1999;

{21} It is further ordered that, pursuant to Rule 17–206(B), respondent shall be automatically reinstated to probationary status for five years commencing January 1, 2001, through December 31, 2005, on the following terms and conditions:

(1) Respondent shall take and successfully pass the Multistate Professional Responsibility Examination;

(2) Respondent shall successfully complete a long-term, in-patient treatment program;

(3) Respondent shall continue with appropriate out-patient treatment consistent with his release from the long-term, in-patient treatment program; and

(4) During the period of probation, respondent shall continue to satisfy the requirements of the written monitoring agreement, which outlines a program for his

recovery. The agreement includes, but is not limited to, regular meetings with his attorney monitor, participation in a twelve step recovery program with a regularity of at least three to five meetings per week and a requirement that he shall accompany his attorney monitor to at least two of those meetings each month, and participation in random drug testing and screening announced and coordinated by the New Mexico Council on Alcohol and Drug Dependency and the State Bar Lawyer Assistance Committee.

{22} It is further ordered that during the period of probation, respondent shall be supervised by an attorney approved by the office of disciplinary counsel. Respondent shall meet with his supervising attorney at times and places directed by the supervisor and shall follow all reasonable directions in a prompt and satisfactory manner;

{23} It is further ordered that respondent shall provide access to his trust account information to his supervising attorney and shall pay for an annual audit of his trust account as ordered by disciplinary counsel;

{24} It is further ordered that respondent shall pay his supervising attorney an agreed-upon fee for the time spent in supervising him. Payment of the supervising attorney's fees shall be deemed a condition of respondent's probation;

{25} It is further ordered that respondent shall pay the costs of this disciplinary proceeding in the amount of $973.20 on or before June 30, 2001. Payment of costs shall be deemed a condition of respondent's probation;

{26} It is further ordered that should respondent violate any of the terms and conditions of probation, or fail to seek reinstatement pursuant to Rule 17–214(H) within three months of the conclusion of his probationary period, respondent shall be held in contempt pursuant to Rule 17–206(G) and may be fined, censured, suspended, disbarred, or subjected to any other sanction ordered by this Court; and

{27} It is further ordered that any failure to comply with the terms and conditions of probation shall be brought to the attention of this Court by way of a verified motion for order to show cause filed by disciplinary counsel and respondent shall be subject to the contempt powers of this Court provided by Rule 17–206(G). Any violation shall be met with a policy of zero tolerance and result in immediate revocation of the probationary status.

{28} **IT IS SO ORDERED.**

GENE E. FRANCHINI, Justice, not participating.