**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2019-NMSC-016

Filing Date: September 23, 2019

NO. S-1-SC-37393

**IN THE MATTER OF
JENNIE DEDEN BEHLES**

**An Attorney Disbarred from
the Practice of Law Before the Courts
of the State of New Mexico**

Released for Publication November 5, 2019.

Anne L. Taylor
Albuquerque, NM
for Disciplinary Board

Wilfred Thomas Martin, Jr.
Carlsbad, NM

Marion James Craig, III
Roswell, NM

for Respondent

**OPINION**

**VIGIL, Justice.**

**I.      INTRODUCTION**

**{1}**     In this opinion we address the failure of Jennie Deden Behles (Behles) to comply with the Rules of Professional Conduct and Rules Governing Discipline related to client trust accounts and reasonable fees. Though Behles has led a long career as a member of the New Mexico bar, this failure and her past disciplinary record demand her disbarment. The Court reviewed Behles's conduct on the recommendation of the Disciplinary Board (the Board) to sustain charges and impose discipline for violations of Rule 16-105 NMRA (fees), Rule 16-115 NMRA (safekeeping property), and Rule 16-804(D) NMRA (engaging in conduct prejudicial to the administration of justice).

**{2}**     The Board adopted the hearing committee's findings of fact that Behles expended client funds she had been ordered to hold in trust, failed to maintain complete

records of her client trust account, failed to keep client money separate from her own, and unreasonably charged a contingent fee on the return of her client's court bond. These findings supported the Board's ultimate conclusion that Behles violated the aforementioned rules. Specifically noting that Behles's conduct met a host of aggravating factors—including "prior discipline, a dishonest and selfish motive, a pattern of misconduct, commission of multiple offenses, refusal to acknowledge the wrongful nature of her conduct, and substantial experience in the practice of law"—the Board recommended that this Court disbar Behles.

**{3}**     The Court adopted the Board's findings of fact and conclusions of law in their entirety. Accepting the Board's recommended discipline, the Court permanently disbarred Behles.[1] *See* Rule 17-206(A)(1) NMRA. Additionally, the Court ordered Behles to pay restitution in the amount of $19,239.00, plus interest at the statutory judgment rate, to her client, Dubalouche, LLC (Dubalouche), *see* Rule 17-206(C), as well as to pay costs to the Board for these disciplinary proceedings.

**{4}**     We write to emphasize the longstanding principle that "stealing client funds is perhaps the most egregious violation of a lawyer's ethical responsibilities[.]" *In re Zamora*, 2001-NMSC-011, ¶ 12, 130 N.M. 161, 21 P.3d 30 (per curiam) (quoting *In re Kelly*, 1995-NMSC-038, ¶ 8, 119 N.M. 807, 896 P.2d 487 (per curiam)). This Court will not condone misconduct that irreparably erodes the sacred bond of trust shared between attorney and client.

## II.     BACKGROUND

**{5}**     Behles has been licensed to practice law in New Mexico for nearly fifty years. Her practice at the Behles Law Firm (BLF) focused largely on bankruptcy and construction law. This is the second time Behles has been subject to discipline from this Court for her failure to properly manage her client trust account.

**{6}**     In 2006, Behles consented to discipline for violating Rule 16-115 (safekeeping property) and Rule 17-204 NMRA (trust accounting). As a result, the Court indefinitely suspended Behles for a minimum of three years. That suspension was deferred so long as Behles complied with certain probationary requirements. The probationary requirements mandated that she meet with a supervising accountant at least once per month to receive instruction on correct record keeping and management of her trust account. Before being reinstated, Behles was required to prove that (1) her trust account was in compliance with Rules 16-115 and 17-204, (2) she understood the requirements of those rules, (3) she adequately supervised all transactions to and from her trust account, and (4) she maintained the required records for her trust account. Having met these requirements, Behles was eventually reinstated, but her conduct underlying these proceedings demonstrates that the lessons once learned were not indelible.

---

[1]The Court originally set the effective date of disbarment for March 31, 2019 but extended that date to April 30, 2019 by granting Behles's motion for extension.

## A.    Behles's Representation of Dubalouche

**{7}**    Dubalouche owned and leased out an expensive commercial property in Albuquerque. Dubalouche's tenant hired a general contractor, AIC General Construction, Inc. (AIC), to renovate the building. In turn, AIC hired Precision Service Electric, LLC (Precision) and Floorshield, LLC (Floorshield) as subcontractors. When none of these contractors were paid in full by the tenant, each company filed liens on Dubalouche's property.

**{8}**    Dubalouche sought Behles's legal assistance because Dubalouche intended to sell the building and therefore needed to evict the tenants and remove the liens. Moreover, Dubalouche contended that one or all of the contractors had damaged the building's foundation, devaluing the property. In December 2014, Behles agreed to represent Dubalouche.

**{9}**    Behles's misconduct that brings her before the Court arises from two fee agreements she had with her client Dubalouche and her commingling of client money paid under those fee agreements, as well as her improper accounting and retention of client resources with respect to a settlement.

### 1.    First fee agreement and the $7,500.00 retainer

**{10}**    Under the original fee agreement, Dubalouche agreed to pay Behles $7,500.00 as "collateral to secure payment of fees." Behles agreed to charge on an hourly basis and to draw against the retainer only if Dubalouche defaulted on payments. This agreement also provided Behles an attorney's charging lien and a retaining lien "against any funds . . . which [are] recovered, preserved, maintained, released, awarded as a result of Attorneys' efforts." Chad Aldawood paid the full amount of the retainer on December 22, 2014. Though it was client money paid in advance, Behles did not account for this payment in her trust account ledger. Instead, Behles deposited the $7,500.00 check directly into the BLF operating account. There is no evidence in the record that Behles sent Dubalouche invoices reflecting fees earned in the time between the ratification of the fee agreement and the date she deposited the retainer in her operating account. According to Behles's transaction listing for Dubalouche, Behles did not bill Dubalouche for services until February 6, 2015.

### 2.    Dubalouche debts and the $25,000.00 flat fee under the second fee agreement

**{11}**    On July 5, 2015, Behles notified intent to assert an attorney's charging lien and retaining lien in Dubalouche's lawsuit against the contractors to cancel the liens on the property. At the time she gave notice of her intent to assert the liens, Behles claimed Dubalouche owed $28,176.47. Behles sought to attach a charging lien to "[a]ll accounts, residuals, proceeds, issues, profits, and money payable to, awarded to, or secured by Dubalouche, LLC, by virtue of any claim or settlement agreements or judgments entered with respect" to the lawsuit.

**{12}** Following Behles's assertion of the liens, Dubalouche made several payments to BLF. By July 13, 2015, Dubalouche had paid a total of $27,600.00 to BLF, leaving an owing balance of $576.47. That same day, Behles billed Dubalouche for an additional $7,834.39. On July 31, 2015, Dubalouche paid Behles $8,000.00, bringing the owing balance to $410.86.  On August 3, 2015, Behles billed Dubalouche for $16,535.70. At this point, it would appear that Dubalouche owed a total of $16,946.56 to BLF. Dubalouche did not make another payment until after the ratification of a second fee agreement.

**{13}** On September 9, 2015, Behles and Dubalouche entered into a second fee agreement, in which Dubalouche agreed to pay BLF a flat fee of $25,000.00 that would cover "all work to be performed from the date of September 9, 2015 forward." On September 14, 2015, Behles informed Dubalouche's out-of-state counsel that the outstanding amounts owed by Dubalouche were "included/forgiven" within the flat fee. On September 16, 2015, the $25,000.00 flat fee payment was deposited directly into the BLF operating account. Behles's trust account ledger does not account for Dubalouche's payment of the flat fee, even though the payment was explicitly designated for future work under the second fee agreement.

### 3. Disbursement of a portion of Dubalouche's court bond

**{14}** In order to remove the contractors' liens from the building, Dubalouche was required to deposit a bond with the district court to secure the amounts claimed to be owed. Precision claimed it was owed $9,084.00; Floorshield claimed it was owed $18,450.00; and AIC claimed it was owed a total of $185,639.28, which included the amounts owed to its subcontractors, Precision and Floorshield. The district court ordered Dubalouche to deposit a $151,889.57 bond with the court registry to secure all three liens. From this amount, $20,812.00 was credited to secure Precision's lien, and $30,926.00 was credited to secure Floorshield's lien, for a total of $51,738.00 credited to secure both subcontractors' liens.

**{15}** In December 2015, Dubalouche, Precision, and Floorshield entered into a settlement agreement in which Dubalouche agreed to pay Precision and Floorshield a combined total of $32,500.00 to satisfy their respective liens. Under the settlement agreement, Dubalouche, Precision, and Floorshield released all claims or potential claims against each other. This release included Dubalouche's potential counterclaims for the alleged damage to the building. The district court approved the settlement and directed the registry to disburse $32,500.00 to the trust account of the Moses Law Firm, which represented Precision and Floorshield. The district court ordered that the remaining $19,239.00 (of the $51,738.00 credited to secure both liens) be disbursed "to Behles Law Firm Trust Account for Dubalouche, LLC."[2] The balance of Dubalouche's

---

[2]The district court order contains an error in the amount of the disbursement to BLF for Dubalouche. The correct remainder of Dubalouche's $51,738.00 court bond after settling payment to the subcontractors is $19,238.00. This correct amount is reflected in the language of the district court's order, but the parenthetical numerical value is incorrect by one dollar. The order states that "an additional Nineteen Thousand Two Hundred Thirty-Eight and

total court bond remained with the court registry pending resolution of the claims between Dubalouche and AIC.

## 4.    Behles's accounting and retention of the $19,239.00 disbursement

**{16}**    On January 11, 2016, Behles's paralegal deposited the $19,239.00 check from the court registry into the BLF client trust account. Throughout the remainder of January, Behles transferred amounts exceeding the $19,239.00 disbursement from the trust account to the BLF operating account. According to the January bank statement for the BLF trust account, on January 12, Behles transferred $6,500.00 from the trust account to the operating account. On January 13, she transferred $4,500.00. On January 15, she transferred $6,000.00. On January 19, she transferred $1,000.00. On January 20, she transferred $1,200.00. On January 26, she transferred another $1,000.00. Finally, on January 29, she transferred $175.00. It is important to note that Behles did not have invoices for work performed for Dubalouche to support the transfer of these amounts.

**{17}**    Behles claimed to have sent Aldawood a billing letter on January 21, 2016, along with a check for the funds issued from the court registry. In her letter, Behles did not state the amount of the check she was sending, and there is no copy of this check in the record. Aldawood claimed that he never received the January 21 letter nor the check from Behles. One month later, Dubalouche's out-of-state counsel asked Behles about the disbursement from the court registry. In response to this inquiry, Behles wrote, "Got me we will check- I know it has not come back." On March 2, 2016, Behles wrote to Aldawood that she was holding Dubalouche's portion of the $19,239.00 "on hand." On two more occasions, in another letter to Aldawood and in her response to the disciplinary complaint filed by Aldawood, Behles claimed that she had issued Dubalouche a check for its share of the $19,239.00 disbursement, minus costs she had incurred since the date of the settlement order. Behles's trust account records do not indicate that she ever issued a check to Dubalouche as she had claimed on several occasions.

**{18}**    Behles's trust ledger for Dubalouche was created *after* the initiation of the Board's investigation. The trust ledger shows that Behles retained the entire $19,239.00 disbursement from the court registry for herself, which she accounted for as follows: $8,555.29 as her 40% contingent fee, $2,113.89 for some costs advanced, and $8,569.82 for a portion of the flat fee that she considered outstanding even after Dubalouche had transmitted the check for $25,000.00.

**{19}**    Behles's claim to a 40% contingent fee on the $19,239.00 disbursement arises from the second fee agreement. Under that agreement, Behles would receive a 40% contingent fee on any "amount recovered" on Dubalouche's counterclaim against AIC, Floorshield, and Precision for building damage. As we will explain, we adopt the Board's

---

No/100 Dollars ($19,239.00) should be disbursed." Ultimately, the district court disbursed the incorrect amount of $19,239.00.

determination that Behles did not secure a recovery on behalf of Dubalouche and therefore was not entitled to any contingent fee.

**{20}**     Aldawood filed a disciplinary complaint against Behles in May 2017 alleging that Behles was "improperly holding funds that the [district c]ourt authorized be paid to Dubalouche[.]" Following an investigation, disciplinary counsel filed a specification of charges against Behles claiming the following violations of the Rules of Professional Conduct: charging an unreasonable fee in violation of Rule 16-105, failing to hold client money separate from her own and failing to keep complete records of her trust account in violation of Rule 16-115, "knowingly making a false statement of material fact in a disciplinary matter" in violation of Rule 16-801, "engaging in conduct involving fraud, deceit or misrepresentation" in violation of Rule 16-804(C), and "engaging in conduct that is prejudicial to the administration of justice" in violation of Rule 16-804(D).

**{21}**     Following two days of testimony, the hearing committee made findings of fact and concluded that Behles violated Rules 16-105, 16-115, and 16-804(D). As discipline, the hearing committee recommended suspending Behles for a period of six months, requiring Behles to make full restitution to Dubalouche in the amount of $19,239.00 plus interest, requiring Behles to attend five hours of continuing legal education in "law office management and trust account management[,]" and upon conclusion of her suspension, placing Behles on a twelve-month supervised probation period and assigning her a supervising attorney to monitor her records and management of her trust account.

**{22}**     Upon review, the Board adopted the hearing committee's findings of fact and conclusions of law that Behles violated Rules 16-105, 16-115, and 16-804(D). The Board recommended a modification and increase of the recommended discipline based on the type of violations at issue, numerous aggravating factors, and the lack of any mitigating factors found by the hearing committee. Citing this Court's precedent instructing that disbarment is appropriate when an attorney violates the Rules of Professional Conduct mandating safekeeping of client property and proper trust accounting, the Board recommended that Behles be disbarred. *See, e.g.*, *In re Kelly*, 1995-NMSC-038, ¶ 8; *In re Rawson*, 1992-NMSC-036, ¶¶ 1, 9, 24, 113 N.M. 758, 833 P.2d 235 (per curiam).

**{23}**     We consider the recommendations of the Board and assess Behles's misconduct in the following instances. First, we consider whether Behles violated Rule 16-115 when she (1) deposited the $7,500.00 retainer directly into her operating account, (2) deposited the $25,000.00 flat fee directly into her operating account, and (3) transferred funds in an amount exceeding that of the $19,239.00 disbursement from her trust account to her operating account absent any invoices to Dubalouche reflecting work performed. Next, we consider whether Behles violated Rule 16-105 when she charged a 40% contingent fee on the return of Dubalouche's court bond in the form of the $19,239.00 disbursement. Finally, we consider whether Behles's misconduct was prejudicial to the administration of justice in violation of Rule 16-804(D).

## III.     DISCUSSION

**{24}** In reviewing the disciplinary proceedings before the Board and imposing the discipline it recommends, we view the evidence in the light most favorable to the Board's findings of fact. *See In re Bristol*, 2006-NMSC-041, ¶ 28, 140 N.M. 317, 142 P.3d 905 (per curiam). We review the Board's conclusions of law de novo. *See id.* ¶ 18. In doing so, we adopt the Board's findings of fact and conclusions of law in their entirety.

### A. Behles Was Afforded Due Process of Law Throughout the Disciplinary Proceedings

**{25}** Before the hearing committee, the Board, and this Court, Behles argued that her right to due process was violated when the Board made findings of fact and recommendations for discipline based on her failure to hold in trust the $7,500.00 retainer and the $25,000.00 flat fee. She asserted that neither payment was identified in the specification of charges to support the charge that she violated the rules of proper trust accounting. For this reason, she argued that she was not given adequate notice of the charge or an opportunity to defend herself in regard to her handling of the $7,500.00 retainer and $25,000.00 flat fee.

**{26}** Attorneys facing discipline are "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. 544, 550 (1968).

> The specific requirements of procedural due process depend on the facts of each case, and could encompass any number of the following components: (1) notice of the basis for the government action; (2) a neutral decision maker; (3) the opportunity to orally present a case against the state; (4) the opportunity to present evidence and witnesses against the state; (5) the opportunity to cross-examine witnesses; (6) the right to have an attorney present at the hearing; and (7) a decision based on the evidence presented at the hearing accompanied by an explanation of the decision.

*Mills v. N.M. State Bd. of Psychologist Exam'rs*, 1997-NMSC-028, ¶ 14, 123 N.M. 421, 941 P.2d 502.

**{27}** Behles's argument that she was denied due process is not persuasive because the specification of charges clearly identified Behles's mishandling of her trust account as one basis for discipline. This encompassed her failure to deposit the $7,500.00 retainer and $25,000.00 flat fee into her trust account. Before neutral decision makers at each level of the disciplinary proceedings, Behles's counsel presented evidence, including witness testimony, refuting the charge that Behles mismanaged her trust account. We adopt the Board's finding that Behles "defended all issues with respect to her trust account including, but not limited to, an advance payment of $7,500.00 . . . and a flat fee payment of $25,000.00 paid by Dubalouche." We note that the findings of fact regarding Behles's trust accounting violations are based in part on the account records that Behles herself provided. We conclude that the specification of charges adequately

alerted Behles that her trust account records were under investigation, and Behles was afforded due process of law.

## B.     Behles's Professional Misconduct

**{28}**    Behles's continued habit of ignoring the Rules of Professional Conduct and Rules Governing Discipline related to trust accounting and fees is intolerable. In her representation of Dubalouche, Behles violated the rules regarding trust accounting in several instances. Behles's trust account records, where present, are abysmal. Not only did she demonstrate, in the words of the Board, "a fundamental lack of understanding regarding trust accounts and her obligations" under Rules 16-115 and 17-204, she also unreasonably charged her client a contingent fee on the return of the client's own money in violation of Rule 16-105. These instances of misconduct amount to a violation of Rule 16-804(D).

### 1.     Behles commingled client property with her own and failed to keep complete records of her trust account in violation of Rules 16-115 and 17-204(A)

**{29}**    The mandate of Rule 16-115 is clear: lawyers must hold client money in a separate trust account and maintain complete records of that account. Rule 16-115(A). "Any retainer or flat fee not yet earned" is client money that "must be safely kept and held in trust for the client, separately from the lawyer's own property." *In re Montclare*, 2016-NMSC-023, ¶ 19, 376 P.3d 811.

> In order for lawyers and their clients to know what portion of a flat fee or retainer may properly be withdrawn from trust, lawyers must inform their new clients of the basis upon which they will compute the amount of fee earned and maintain records that will enable them to determine the ongoing status of the fee, even when the fee arrangement is for a flat fee[.]

*In re Dawson*, 2000-NMSC-024, ¶ 12, 129 N.M. 369, 8 P.3d 856 (per curiam) (citation omitted). Complete records of a client trust account consist of account balances, reconciliations, bank documents, fee agreements, invoices, and statements detailing all transactions to and from the trust account. Rule 17-204(A).

**{30}**    Behles did not keep complete records of her trust account in violation of Rule 17-204(A). First, Behles's trust account ledger does not list the $7,500.00 retainer nor the $25,000.00 flat fee, both of which were unearned fees at the time they were received. Second, the record is devoid of any invoices corresponding to the seven transfers Behles made from the trust account in January 2016. This dearth of accounting records is a clear violation of Rule 17-204(A).

**{31}**    Behles violated Rule 16-115(A) on three separate occasions when she commingled Dubalouche's money with that of her firm's operating account. The initial

retainer, flat fee payment, and $19,239.00 court disbursement was client money when it was received by BLF. Accordingly, it was to be held in trust and properly recorded. *See* Rule 16-115(A); Rule 17-204(A). This was not done.

**{32}**    Behles's handling of the $7,500.00 retainer, the $25,000.00 flat fee, and the $19,239.00 disbursement amount to specific violations of Rule 16-115(C)-(E). We address each instance of misconduct in turn.

### a.    Behles violated Rule 16-115(C) when she deposited the $7,500.00 retainer directly into her operating account

**{33}**    All client money that is paid to the lawyer in advance must be deposited into the client trust account "to be withdrawn by the lawyer *only* as fees are earned or expenses incurred." Rule 16-115(C) (emphasis added). Under the initial fee agreement between Behles and Dubalouche, the $7,500.00 retainer was collateral to secure Dubalouche's payment of fees. The agreement stated that Behles would not draw upon the funds unless Dubalouche was in default. Therefore, the $7,500.00 retainer was client money paid in advance and should have been deposited in Behles's trust account pursuant to Rule 16-115(C). Behles violated Rule 16-115(C) when she deposited the $7,500.00 retainer directly into her operating account.

**{34}**    Behles argued that it was permissible for the retainer to be deposited into her operating account because "this work had already been done[.]" This assertion is unsupported by evidence as Behles failed to produce a client invoice to show she had completed work for Dubalouche at the time she deposited the retainer in her operating account. Her transaction record for the Dubalouche account does not list an invoice until February 6, 2015, more than one month after Behles deposited the initial retainer in her operating account. Behles's failure to deposit the $7,500.00 retainer into her trust account is her first violation of Rule 16-115(C) in this disciplinary case.

### b.    Behles violated Rule 16-115(C) when she deposited the $25,000.00 flat fee directly into her operating account

**{35}**    Behles violated Rule 16-115(C) a second time when she failed to deposit Dubalouche's flat fee payment under the second fee agreement into her trust account. "[A] flat fee for future legal services cannot be considered as earned when paid and must be held in trust until earned." *In re Yalkut*, 2008-NMSC-009, ¶ 26, 143 N.M. 387, 176 P.3d 1119 (per curiam). Under the second fee agreement, Dubalouche agreed to pay a $25,000.00 flat fee for work to be performed from the date of the agreement forward. Behles did not provide an invoice for services between the date of the agreement and the date she deposited the flat fee payment into her operating account. This means that Dubalouche's payment of $25,000.00 was an unearned fee at the time Behles improperly deposited it into her operating account.

**{36}**    Behles argued that she did not violate Rule 16-115(C) in this instance because Dubalouche's check for $25,000.00, received shortly after the execution of the second

fee agreement, was not the flat fee payment but was instead meant to satisfy the August 3, 2015 bill for $16,535.70. She claimed that once the August 3, 2015 bill was satisfied, the remainder of the $25,000.00 was partial payment of the flat fee under the second fee agreement.

**{37}** This argument fails for two reasons. First, we adopt the Board's finding that Behles was paid in full for her representation of Dubalouche once she accepted the $25,000.00 flat fee. Two days before the $25,000.00 was deposited into her operating account, Behles informed Dubalouche's out-of-state counsel that the outstanding amounts due to BLF were "forgiven/included" in the $25,000.00 flat fee under the second fee agreement. Therefore, the August 3, 2015 bill of $16,235.70 was forgiven when Dubalouche paid the flat fee on September 16, 2015. Behles should not have credited any amount of the $25,000.00 flat fee to the August 3, 2015 bill. Second, even if we accepted her argument that part of the $25,000.00 was meant to satisfy the August 3, 2015 bill, Behles did not deposit the remainder of the flat fee payment into her trust account. That remainder was unquestionably an unearned fee when paid. It should have been held in trust until Behles could account for how it was earned. *See In re Dawson*, 2000-NMSC-024, ¶ 12. Because she did not deposit the payment of the $25,000.00 flat fee into her trust account, Behles violated Rule 16-115(C).

**c.** **Behles violated Rule 16-115(D) when she failed to account for and deliver the $19,239.00 court disbursement to Dubalouche**

**{38}** When a lawyer receives funds belonging to a client (i.e., proceeds from a settlement or recovery) the lawyer must "promptly notify the client" of the receipt, "promptly deliver" the funds to the client, and upon request by the client, render a "full accounting." Rule 16-115(D). Behles violated Rule 16-115(D) when she failed to account for and deliver the $19,239.00 court disbursement to her client.

**{39}** The $19,239.00 disbursement was a return of Dubalouche's own money. It was the remainder of Dubalouche's $51,738.00 court bond following the $32,500.00 payment to Precision and Floorshield pursuant to the settlement agreement. The district court ordered Behles to hold the $19,239.00 disbursement in trust for Dubalouche. Despite this order and the requirements of Rule 16-115(D), Behles failed to deliver the $19,239.00 disbursement to Dubalouche.

**{40}** Though she repeatedly stated that she was holding the funds from the disbursement on hand and planned to remit payment, Behles's bank records bely those assertions. Behles had transferred the full $19,239.00 out of the client trust account and into the BLF operating account by January 26, 2016. She did so absent concurrent documentation that she earned any amount from the disbursement. Because Behles was required to account for and deliver the funds to which her client was entitled, we conclude that she violated Rule 16-115(D).

**{41}** Behles believed she was owed the full amount of the disbursement in fees and costs and argued that her assertion of an attorney charging lien and a retaining lien

gave her the right to recover those fees and costs out of the $19,239.00 disbursement. We disagree. Charging and retaining liens only attach to a client's property when the client has failed to pay the attorney for legal services. *See In re Venie*, 2017-NMSC-018, ¶ 39, 395 P.3d 516; *Computer One, Inc. v. Grisham & Lawless, P.A.*, 2008-NMSC-038, ¶ 12, 144 N.M. 424, 188 P.3d 1175. As we have explained, Behles was paid in full for her representation of Dubalouche when she received the $25,000.00 flat fee payment on September 16, 2015. Since Dubalouche was not in default, no charging or retaining liens attached to the disbursement from the court registry.

### d. Behles violated Rule 16-115(E) when she failed to maintain the $19,239.00 court disbursement in trust despite her client's claims to the funds

**{42}** Should any dispute arise between the lawyer and client regarding each party's interest in certain funds, the lawyer is required to keep the funds separate "until the dispute is resolved." Rule 16-115(E). Behles violated Rule 16-115(E) when she unilaterally transferred the $19,239.00 out of the trust account despite Dubalouche's claim to the full amount of the disbursement. Clearly there was a dispute between Dubalouche and Behles regarding their interests in the disbursement from the court registry. The appropriate response would have been for Behles to hold the funds in trust until the dispute was resolved. *See id.* However, Behles paid no heed to this requirement and took from her client what she felt she deserved.

**{43}** For the foregoing reasons, we conclude that Behles commingled client property and failed to keep complete trust account records in violation of Rules 16-115 and 17-204(A).

### 2. Behles violated Rule 16-105 when she charged an unreasonable contingent fee on the return of Dubalouche's court bond

**{44}** Rule 16-105(A) mandates that lawyers "shall not . . . charge or collect an unreasonable fee." Under the second fee agreement, Behles was entitled to a 40% contingent fee on the "amount recovered" on Dubalouche's counterclaims against AIC, Precision, and Floorshield for alleged damage to the building. Dubalouche received money back under the settlement agreement with Precision and Floorshield, but that money was not a recovery on its counterclaims.

**{45}** Behles argued she was owed a 40% contingent fee because Dubalouche recovered $19,239.00 pursuant to the settlement agreement and subsequent court disbursement. She claimed $19,239.00 was a recovery because it was a sum of money she "got back or regained for the benefit of Dubalouche." We disagree with Behles's characterization and adopt the Board's findings that Behles was not entitled to a contingent fee because Dubalouche did not recover any amount on its counterclaims.

**{46}** The following supports the Board's finding that there was no recovery for which Behles could charge a contingent fee. First, the settlement agreement did not specify that the subcontractors paid any damages on Dubalouche's counterclaims. Second, as

we have explained, the $19,239.00 disbursement was a return of the remainder of Dubalouche's court bond following the settlement with the subcontractors. The fact that Dubalouche deposited a bond in a greater amount than was ultimately used to settle the litigation does not mean that Dubalouche *recovered* $19,239.00. The $19,239.00 disbursement was a return to Dubalouche of the balance of the court bond that it had paid to secure the release of liens. As such, it was not a recovery.

{47}     Behles argued that the $19,239.00 was a recovery because she was able to leverage Dubalouche's potential counterclaims to reduce the amount Precision and Floorshield claimed they were owed during the settlement negotiation. The record does not support this argument. Precision's and Floorshield's liens on the property totaled $27,534.00. Under the settlement, Dubalouche agreed to pay Precision and Floorshield $32,500.00 to satisfy the liens and secure a mutual release of claims. Ultimately, Dubalouche paid approximately $5,000.00 more than the initial amount of the subcontractors' liens. Behles's own testimony before the hearing committee is the only evidence in the record to support her claim that Precision and Floorshield settled for a lesser amount than their initial demand in exchange for Dubalouche's release of its counterclaims. This specific bargain is not memorialized in the settlement agreement.

{48}     Because we view the evidence in the light most favorable to the Board's findings, we adopt the finding that Dubalouche did not recover on the counterclaims.  We conclude that it was unreasonable and a violation of Rule 16-105 for Behles to charge a contingent fee on the $19,239.00 disbursement from the court registry.

### 3.     Behles's misconduct is prejudicial to the administration of justice in violation of Rule 16-804(D)

{49}     "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" Rule 16-804(D). Misconduct involving "dishonesty [and] breach of trust" fall into the category of offenses that "reflect adversely on fitness to practice law." Rule 16-804 Comm. commentary [2]. Behles's misconduct is an affront to the legal profession. She has repeatedly engaged in professional practices riddled with deceit to the detriment of her client, as well as the reputation of all lawyers in this state. Lawyers play an integral role in the justice system, granting their clients access to the law's remedies and protections. When the integrity of one lawyer is put into question, the integrity of the entire justice system is put into question. This will not stand. Because she failed to deliver the $19,239.00 disbursement to Dubalouche while misrepresenting that she was holding that money in trust, Behles has engaged in conduct prejudicial to the administration of justice in violation of Rule 16-804(D).

### C.     Behles's Misconduct Requires Her Disbarment From the Practice of Law

{50}     In our order of March 5, 2019, we adopted the Board's recommendation for discipline and permanently disbarred Behles from the practice of law. In dispensing discipline, we are guided by our prior decisions regarding similar misconduct and the

American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards). *In re Key*, 2005-NMSC-014, ¶ 5, 137 N.M. 517, 113 P.3d 340 (per curiam).

**{51}** The presumptive form of discipline for knowingly misappropriating client funds is disbarment. *See In re Reynolds*, 2002-NMSC-002, ¶¶ 13-14, 131 N.M. 471, 39 P.3d 136 (per curiam). "A lawyer's trust account should be held sacred; wilfully taking funds from a trust account cannot and will not be tolerated by this Court." *In re Zamora*, 2001-NMSC-011, ¶ 12 (quoting *In re Kelly*, 1995-NMSC-038, ¶ 8). Our view is consistent with ABA Standard 4.11, which provides that disbarment is appropriate when attorneys knowingly or intentionally misappropriate client property, causing their client injury. *See* Am. Bar Ass'n, *Annotated Standards for Imposing Lawyer Sanctions*, Standard 4.11, Annotation, at 132 (2015) (explaining that courts focus on "deliberate conduct" when determining whether disbarment for misappropriation is warranted).

**{52}** We conclude that Behles knowingly commingled her client's property with her own when she (1) deposited the $7,500.00 retainer into her operating account, (2) deposited the $25,000.00 flat fee into her operating account and (3) transferred $19,239.00 of her client's money out of the trust account and into her firm's operating account. Without any concurrent invoices demonstrating that she earned fees from these amounts, Behles took for herself the $7,500.00 retainer, the $25,000.00 flat fee, and the $19,239.00 disbursement. This conduct caused her client undeniable injury. Adding insult thereto, Behles repeatedly misrepresented to her client that she had maintained the $19,239.00 disbursement in trust and planned to remit payment.

**{53}** In addition to her serious failure to conform to the Rules of Professional Conduct at issue in this case, there are many aggravating factors we consider in our imposition of discipline. In particular, Behles's prior discipline for similar misconduct, her substantial experience in law, and her refusal to acknowledge the wrongfulness of her behavior lead us to conclude that disbarment is the only way to protect the public from the grave consequences of Behles's transgressions. *See* Rule 17-Preface NMRA ("The purpose of discipline of lawyers is the protection of the public, the profession[,] and the administration of justice[.]").

## IV. CONCLUSION

**{54}** We adopt the Board's findings of fact and conclusions of law in this case and permanently disbar Behles from the practice of law, effective April 30, 2019. In addition, we order her to pay costs to the Board in the amount of $3,127.93 and to pay restitution to Dubalouche in the amount of $19,239.00 consistent with our March 5, 2019 order.

**{55} IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**